Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED
Jul 08 2013, 9:46 am

CLERK
of the supreme court,
court of appeals and
tax court

ATTORNEYS FOR APPELLANTS:

**DAVID W. STONE IV**
Stone Law Office & Legal Research
Anderson, Indiana

**ALLAN R. STOUT**
Stout Law Group, P.C.
Angola, Indiana

ATTORNEYS FOR APPELLEE:

**JAMES O. WAANDERS**
Indianapolis, Indiana

**CRAIG T. BENSON**
Angola, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | | |
|---|---|---|
| IN RE THE GUARDIANSHIP OF CARLTON H. WORD | ) ) ) | |
| TIMOTHY W. WORD AND TRACY L. WISE, | ) ) ) | |
| Appellants, | ) ) | No. 76A03-1209-GU-395 |
| vs. | ) ) | |
| RANCE BUEHRER Guardian of Carlton H. Word, | ) ) ) | |
| Appellee. | ) | |

APPEAL FROM THE STEUBEN CIRCUIT COURT
The Honorable Allen N. Wheat, Judge
Cause No. 76C01-0711-GU-23

**July 8, 2013**

**MEMORANDUM DECISION – NOT FOR PUBLICATION**

**MATHIAS, Judge**

After Carlton Word's ("Carlton") death, a dispute ensued among his surviving family members concerning the ownership of a property known as the Zimmer Farm. Carlton's grand nephew and niece, Timothy Word and Tracy Wise appeal the Steuben Circuit Court's order directing the trustee of Carlton's Trust to distribute the Zimmer Farm as part of the trust residuary, rather than as a specific bequest under the trust or pursuant to an undelivered, unrecorded deed.

We affirm.

## Facts and Procedural History

On November 21, 2007, Rance Buehrer was appointed Guardian of Carlton's financial estate. Carlton, who had no children and died in December 2011,[1] had a brother, Dink Word. Dink had two sons: Roger Word and Johnny Word. Roger Word, who predeceased Carlton, had two children: Timothy Word and Tracy (Word) Wise. Johnny Word has one son, Eric Word.

Carlton had numerous assets, most of which were distributed through an inter-vivos trust. The trust was created in 1991, and contained the following provision relevant to this appeal:

> All real estate held in the Trust to Roger Word, as well as all farm equipment held in the Trust to Roger Word. The rest, residue and remainder of the Trust assets shall be divided equally between [nineteen named individuals]. If any of the above named person die before distribution of the Trust leaving child, the share of the deceased person shall go to the children of the deceased person.

---

[1] Carlton's wife, Lila, died in 2007.

Ex. Vol., Respondent's Ex. A. Carlton also amended the trust that same year to provide that if "Roger Word should predecease the Settlor any real estate or other property going to Roger Word under the terms of the Trust shall be divided equally between Tracy Word and Timothy Word, children of Roger Word." Id.; Appellant's App. p. 31.

In 1993, Carlton purchased the Zimmer Farm. Johnny bid on the farm at auction on Carlton's behalf and Carlton paid the $72,000 purchase price. Roger, Johnny, and Timothy worked on the farm in various capacities.

In 1998, Carlton executed his last Will and Testament, which provided that upon his death any existing non-trust probate assets would "pour over" into his Trust for final distribution in accordance with the terms of his Trust. At the same time, Carlton executed a second amendment to his trust:

> [T]he Settler hereby provides that in the event Roger Word predeceases the Settlor, or is not living at the time of distribution of the Trust, the distribution going to Roger Word shall be divided two-thirds to Timothy Word and one-third to Tracy Wise.
> Roger Word shall further have any livestock, grain in storage and growing crops.
> ***
> The Settlor further provides that after the death of Settlor and Lila T. Word, Roger Word shall have the right to purchase from the Trust the property know as the "Zimmer Farm" for the sum of $72,000.

Appellant's App. p. 32.

Importantly, the 1998 amendment also provides that "after the distribution to Roger Word the residue of the Trust" would be distributed to the same nineteen people listed in the original trust document, but each individual would receive a specific cash amount. The amendment then provides:

3

In the event there are insufficient cash assets to make the above payments, the Successor Trustees are hereby directed to make a prorata distribution among the above named persons of the residue of the Trust and in the event there are assets in excess of the cash distributions provided for above, the excess shall be divided on a prorata basis among the residuary beneficiaries named above.

Appellant's App. p. 32.

Roger predeceased Carlton in 2005. After Carlton's death in December 2011, Johnny Word, acting as co-personal representative of the estate, was inventorying Carlton's personal effects when he discovered a warranty deed purporting to transfer the Zimmer Farm to himself and his son Eric. The deed was never recorded and Carlton held himself out as the owner of the farm until his death.

On January 20, 2012, Buehrer, who in addition to being the guardian of Carlton's financial estate, was also a named trustee of Carlton's Trust, filed the final report and accounting for the guardianship. The Zimmer Farm was listed as an asset to be distributed to Carlton's estate.

On February 14, 2012, Johnny and Eric filed an objection to the Guardian's Final Report and Accounting. Johnny and Eric argued that the Zimmer Farm should not be distributed to Carlton's estate because Carlton had executed the 1994 warranty deed conveying the farm to them.

In response to Johnny and Eric's objection, Timothy and Tracy entered their appearance as interested parties and filed a motion for summary judgment requesting that the court overrule Johnny and Eric's objection to the final accounting. Timothy and Tracy argued that Johnny and Eric's warranty deed is a nullity because it was never

4

recorded or delivered to them. Timothy and Tracy argued that the Zimmer Farm was an asset of Carlton's Trust, and under the terms of the trust, the farm was to be distributed to them.

The trial court denied the motion for summary judgment and a bench trial was held on August 3, 2012. Shortly thereafter, the trial court issued its findings of facts and conclusions of law. First, the trial court found that the 1994 warranty deed was never actually or constructively delivered to Johnny and/or Eric and that it was never recorded in the Steuben County Recorder's Office. Therefore, the court concluded that "Johnny and Eric did not become the co-owners of the Zimmer Farm on May 23, 1994, or, at any point in time thereafter."[2] Appellant's App. p. 15. The trial court also concluded that Timothy and Tracy are not the co-owners of the Zimmer Farm. Specifically, the trial court rejected their argument that under Carlton's Trust they became lawful owners of the farm due to the fact that their father, Roger, predeceased Carlton. The trial court concluded that "the Zimmer Farm must be distributed as part of the Trust residuary all as set forth in the second amendment to Carlton's Trust dated June 4, 1998." Id. at 17. Timothy and Tracy now appeal the trial court's judgment.[3]

**Standard of Review**

The trial court entered findings of fact and conclusions of law sua sponte. Our standard of review under this circumstance is well settled: specific findings control only

---

[2] Johnny and Eric have not appealed the trial court's order concluding that the 1994 warranty deed was invalid.

[3] On October 2, 2012, the trial court stayed its August 21, 2012 order directing the trustee to dispose of the Zimmer Farm under the residuary clause under the second amendment of Carlton's Trust.

5

as to issues they cover, and a general judgment standard applies to any issues upon which the trial court has not made findings. Jewell v. City of Indianapolis, 950 N.E.2d 773 (Ind. Ct. App. 2011). We review such findings by determining whether the evidence supports the findings and whether the findings support the judgment. Id. We will reverse only when the judgment is shown to be clearly erroneous, i.e., when it is unsupported by the findings of fact and conclusions entered thereon, or when the trial court applies an incorrect legal standard. Id.; Fraley v. Minger, 829 N.E.2d 476, 482 (Ind. 2005). We defer substantially to the trial court's findings of fact, but we evaluate conclusions of law de novo. Jewell, 950 N.E.2d at 777.

**Discussion and Decision**

Indiana Code section 30-4-1-3 provides that the terms of a trust shall be interpreted and applied "so as to implement the intent of the settlor and the purposes of the trust." "If the rules of law and the terms of the trust conflict, the terms of the trust shall control unless the rules of law clearly prohibit or restrict the article which the terms of the trust purport to authorize." Id.

The interpretation of a trust document is a pure question of law to be decided by the court. Univ. of S. Ind. Found. v. Baker, 843 N.E.2d 528, 531 (Ind. 2006).

> The primary purpose of the court in construing a trust instrument is to ascertain and give effect to the settlor's intention. Indiana follows "the four corners rule" that "extrinsic evidence is not admissible to add to, vary or explain the terms of a written instrument if the terms of the instrument are susceptible of a clear and unambiguous construction." Accordingly, where a trust is capable of clear and unambiguous construction, under this doctrine, the court must give effect to the trust's clear meaning without resort to extrinsic evidence.

6

Id. at 532 (internal quotations and citations omitted).

"A document is not ambiguous merely because parties disagree about a term's meaning." Id. The terms of the trust are ambiguous only if reasonable people could come to different conclusions as to the trust's meaning. Id.

Carlton established his inter vivos trust on March 21, 1991. The inter vivos trust is a unique legal entity. See Matter of Walz, 423 N.E.2d 729, 732 (Ind. Ct. App. 1981). Through establishment of an inter vivos trust, "the settlor may transfer property to a trustee reserving for the life of the settlor the beneficial use of the property with the remainder to designated beneficiaries." Id. "Although the settlor enjoys the beneficial use of the trust property until his death that trust property is not subject to the administration of his estate." Id. (citing Leazenby v. Clinton County Bank & Trust Co., 171 Ind. App. 243, 247-48, 355 N.E.2d 861, 863 (1976)).

Carlton's Trust unambiguously provides that "[a]ll real estate **held in the Trust**" would pass to Roger. Ex. Vol., Respondent's Ex. A (emphasis added). Approximately two years after executing the trust documents, Carlton purchased the Zimmer Farm. Carlton did not transfer the Zimmer Farm into the trust, but owned the property with his wife, and remained the sole owner of the property after her death. See tr. p. 14.

Several years later, in 1998, Carlton amended the trust to provide that if Roger predeceased Carlton (which did in fact occur), "the distribution going to Roger Word shall be divided two-thirds to Timothy Word and one-third to Tracy Wise." Appellant's App. p. 32. Tracy and Timothy rely on this provision to argue that ownership of Zimmer Farm transfers to them under the terms of Carlton's Trust. However, these provisions

cannot apply to the Zimmer Farm because the farm was never transferred into the trust, but owned solely by Carlton on the date of his death.

Moreover, Carlton's treatment of the Zimmer Farm in his trust was distinct from his other real estate. The trust document provides the following specific provision for the Zimmer Farm: "The Settlor further provides that **after the death of Settlor and Lila T. Word**, Roger Word shall have **the right to purchase** from the Trust the property known as the 'Zimmer Farm' for the sum of $72,000." Appellant's App. p. 32 (emphasis added). This provision unambiguously would have allowed Roger to purchase the Zimmer Farm if he survived Carlton and Lila. Under this provision, Roger had no ownership interest in the farm but was simply granted the privilege of purchasing the farm for a reduced price. See Lafayette Expo Center, Inc. v. Owens, 531 N.E.2d 508, 511 (Ind. Ct. App. 1988), trans. denied. Therefore, we agree with the trial court that this provision lapsed when Roger predeceased Carlton.[4]

Once again assuming that the Zimmer Farm was placed in the trust, Timothy and Tracy argue that the provision allowing Roger to purchase the Zimmer Farm conflicts with the provision providing for distribution of "all real estate held in the Trust" to Roger, or to Timothy and Tracy if Roger predeceased Carlton. We reiterate that Timothy and

---

[4] See Hinds v. McNair, 413 N.E.2d 586, 596 (Ind. Ct. App. 1980) (quoting Restatement (2nd) of Trusts § 112(f) (stating that "'[i]f a testator devises property in trust for a person who predeceases him, the devise of the beneficial interest lapses'"). Although the provision in Carlton's trust did not grant Roger a property interest in the Zimmer Farm, but simply the privilege of purchasing the farm, we can logically conclude that like a provision transferring ownership in property, a provision allowing a specific beneficiary to purchase the property of the Settlor after his death lapses when that beneficiary predeceases the Settlor of the trust.

8

Tracy's argument is unavailing for the simple fact that the Zimmer Farm was never placed in Carlton's trust.[5]

As a non-trust asset, the Zimmer Farm was subject to probate under Carlton's will. Carlton's will specified that any existing non-trust probate assets poured over into Carlton's trust for final distribution. Appellant's App. p. 12. Consequently, the trial court properly concluded that under the terms of the June 4, 1998 second amendment to Carlton's trust, the Zimmer Farm must be distributed as part of the trust residuary. The judgment of the trial court is therefore affirmed.

Affirmed.

BAKER, J., and MAY, J., concur.

---

[5] Timothy and Tracy's argument that Carlton clearly intended the Zimmer Farm to pass to Roger, or to them in the event that Roger predeceased Carlton, is not supported by the unambiguous language of the trust document. The trust's terms are unambiguous, so we need not resort to extrinsic evidence to determine Carlton's intent. However, we note that the record is replete with other evidence that further rebuts Timothy and Tracy's argument as to Carlton's intent concerning the disposition of the Zimmer Farm after his death.